IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEANTHONY KIRK, KG-1155, )
    Petitioner, )
)
    v. ) 2:16-cv-733
)
SUPT. MCGINLEY, et al., )
    Respondents. )

MEMORANDUM and ORDER

Deanthony Kirk, an inmate at the State Correctional Institution at Pine Grove has presented a petition for a writ of habeas corpus. For the reasons set forth below the petition will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

Kirk is presently serving a life sentence imposed following his conviction by a jury of three counts of first degree murder and two counts of criminal attempt at No. CP-02-CR-10539-2010 in the Court of Common Pleas of Allegheny County, Pennsylvania. This sentence was imposed on November 1, 2011.[1]

An appeal was taken to the Superior Court in which the issues presented were:

1. The Court erred in not excluding the photographs taken from Mr. Kirk's phone and submitted into evidence as the photos were more prejudicial than probative when they depicted Mr. Kirk holding a gun which was not the murder weapon, and cash, which was not taken in the alleged robbery.
2. The Court erred when it did not strike the testimony of Gregory Matthews and Franklin Brown when Attorney Foreman made a motion to strike based on the testimony being prejudicial and not probative.
3. Mr. Kirk was denied his United States and Pennsylvania Constitutional rights to due process and confrontation clause rights when Dr. Levine testified as to the ballistic results of testing conducted by Deborah Cater.[2]

---

[1] See: Petition at ¶¶ 1-6 as clarified by the answer.
[2] See: Exhibit 4 to the answer.

On August 2, 2013, the judgment of sentence was affirmed.[3] Allowance of appeal was denied by the Pennsylvania Supreme Court on November 26, 2013.[4]

A timely post-conviction petition was filed. That petition was dismissed on October 15, 2014 and an appeal was filed but ultimately dismissed for failure to file a brief.[5]

In the instant petition executed on May 31, 2016 and received in this Court on June 3, 2016, the petitioner contends he is entitled to relief on the following ground:

> The petitioner is being illegally detained by respondent Thomas S. McGinley here at S.C.I. Coal Township[6] pursuant to a void judgment of an unlawful order issued by the Court of Common Pleas of Allegheny County – Criminal Division which this respondent asserts provide such authority to restrict this petitioner's liberty with such detention.
>
> Supporting Facts: Due to the issued judgment from the provided court I am being unconstitutionally confined, and with this Court['s] lack of jurisdiction to impose a lawful order for purposes of execution on 18 Pa.C.S. 2501(2) criminal homicide violates the petitioner['s] due process thus giving this respondent no authority to have this petitioner committed and confined within such custody of the state.[7]

The background to Kirk's conviction is set forth in the August 2, 2013 Memorandum of the Superior Court:

> On June 14, 2010, Brittany Poindexter arrived at apartment 24-B in the Crawford Village housing complex in McKeesport, Pennsylvania.[8] Brittany's brother, Jahard Poindexter, lived at the apartment with his boyfriend, Marcus Madden. Jahard and Marcus were hosting a birthday party for Brittany, who was turning 18 on June 15, 2010. Several friends and family members were gathered at the party and stayed until approximately 11:00 p.m., leaving five individuals inside the apartment, Tre Madden (who was also Brittany's boyfriend, and Brittany's friend, Angela Sanders.

---

[3] See: Exhibit 5 to the answer.
[4] See: Exhibit 6 to the answer.
[5] See: Exhibit 11 to the answer.
[6] At the time the petition was filed, Kirk was incarcerated at the State Correctional Institution in Coal Township. Subsequently he was transferred to the State Correctional Institution at Pine Grove (ECF No.15).
[7] See: Petition at ¶ 12. In his response (ECF No. 16) petitioner appears to be attempting to allege that although charged with a violation of 18 Pa.C.S.A. §2501 he was convicted and sentenced under 18 Pa. C.S.A. §2502. We note that §2501 merely defines criminal homicide and sets for the various classifications of criminal homicide while §2502 defines the various catetorories. Thus, this argument is meaningless.
[8] We observe that McKeesport is located within Allegheny County, Pennsylvania . http://apps.alleghenycounty.us/website/munimap.asp

These five people were sitting in the living room of the apartment when, at approximately 1:00 a.m., there was a knock on the door. Marcus got up and opened the door to find Appellant's co-defendant, Isaiah Hereford. Hereford asked Marcus for a cigarette and, when Marcus opened the screen door to hand him one, Hereford and another masked individual burst through the door brandishing guns. Hereford began screaming, "Get down, where's the money." Marcus backed away from the door and got down on the ground near his brother, Tre. At the same time, Jahard stood up from the couch and began walking in the direction of a stash of money that he and Marcus kept in the apartment. At that moment, the two armed men began firing repeatedly into the room. Marcus grabbed his brother Tre's hand and ducked his head down as the shots continued to ring out. He heard Brittany screaming and smelled gunpowder. Brittany, who was on the couch next to Tre, curled up with her back against him and put a pillow over her face in an attempt to protect her head from the bullets. When the shooting stopped, Brittany, who was uninjured, retrieved her cell phone and dialed 9-1-1. She saw that Tre had blood coming from his arm, Marcus and Angela were both on the ground, and her brother, Jahard, was no longer inside the apartment. As she was speaking with the 9-1-1- operator, Marcus began screaming, "where's Jay," referring to Jahard. Marcus then ran outside the apartment and discovered Jahard lying in the middle of the street.

Shortly thereafter, McKeesport Police Officer Dereck Stitt arrived at the scene. He first observed Jahard Poindexter lying in front of apartment 24-B. He checked Jahard's vital signs and determined that he was deceased. Officer Stitt also saw Marcus outside. Marcus had a minor wound from a bullet that grazed his head. When Officer Stitt went inside the apartment, he found Angela Sanders, who was deceased, and Tre Madden, who was breathing and had a slight pulse. However, as Tre was being transported to the hospital, he went into cardiac arrest and was pronounced dead on arrival.

An autopsy of each victim revealed that Jahard had been shot three times, Angela was shot six times, and Tre was shot eleven times. Ballistic evidence recovered from the scene included eight spent cartridge casings and one projectile from a 9-millimeter Smith and Wesson semi-automatic pistol, as well as four spent bullets from a .38-caliber revolver.

Appellant was implicated in the shooting based on the following evidence. First, Jameelah Miller, who also lived in the Crawford Village housing complex, told police that she heard about the murders shortly after they occurred. Later that same day, Appellant and another man came to Jameelah's apartment. Appellant had a Smith

3

and Wesson gun and began taking it apart to clear it. Jameelah heard Appellant state to the other man that "he didn't mean to shoot that bitch" and that he had "emptied [his] clip." When Jameelah asked Appellant if he committed the murders of Tre, Jahard, and Angela, Appellant "looked at [her] and grinned and said …'Mother Fucker is hungry, I needed to hit a lick.'" Jameelah interpreted "hit a lick" as meaning to rob someone for money and drugs.

The day after the murders, June 16, 2010, Appellant burglarized the home of Darnell Davis, Sr., and was apprehended by police as he fled from that residence by way of a second story window leading onto the roof. After Appellant was taken into custody, Mr. Davis searched his roof and discovered a bag with a Smith and Wesson gun inside it. Ballistics evidence recovered from the scene of the murders, as well as from Angela Sanders' body, confirmed that the gun discovered on Mr. Davis' roof was the 9-millimeter Smith and Wesson pistol used in the triple homicide.

In addition, the gun recovered from Mr. Davis' home was the same weapon used in a shooting that took place several days before the murders. Specifically, on June 9, 2010, Detective Gregory Matthews of the Allegheny County Police Department responded to a report of shots fired on Versailles Avenue in McKeesport. Ballistics evidence was collected at the scene and confirmed that the shots were fired from the same Smith and Wesson pistol found at Mr. Davis' home and used in the triple homicide.

After Appellant's arrest for the burglary of Mr. Davis' home, he was questioned by police about the Smith and Wesson gun found at the scene of that crime. Appellant first told the police that he found the gun inside Mr. Davis' home. However, when the interrogating officer informed him that the focus of the investigation was really on the Crawford Village homicides, Appellant admitted that he brought the gun with him when he burglarized Mr. Davis' home. When asked how he had obtained the weapon, Appellant claimed that on the night of the murders he purchased the gun from two individuals who approached him in the Crawford Village housing complex offering to sell him two firearms. However, this story contradicted Appellant's alibi defense for the homicides, as Appellant had initially told police that he was "home in bed early on the night of the murders." When confronted with this contradiction, Appellant replied that he did not purchase the gun on the same night that the murders took place, but on the night *after* the murders. Again, however, that story "didn't make sense" to the questioning officer as Appellant was taken into custody on the evening of June 16, 2010 for burglarizing the Davis residence.

> In addition to Appellant's admitted possession of one of the firearms used in the Crawford Village shooting, there was other circumstantial evidence connecting him to the homicides. For instance, Appellant's cell phone records revealed that in the hour preceding the shooting, which commenced at 1:08 a.m., Appellant and Hereford called each other over a dozen times. At 1:02 a.m., the calls ceased, and there was no more communication between the two co-defendants until 1:17 a.m.
>
> Moreover, Jade Turner, Appellant's girlfriend, told police that on the night of the murders, she and Appellant were in apartment 35-G of the Crawford Village housing complex. That apartment belonged to Appellant's cousin, Phalan Jones. At 11:45 p.m., Appellant walked Turner home and then returned to apartment 35-G, where he sometimes spent the night. Phalan told police that she went to bed at approximately 12:00 a.m., at which time Appellant was present in her apartment. However, she could not account for Appellant's whereabouts at the time the shooting occurred. However, she claimed that after being awakened by the sound of gunshots, she saw Appellant in her apartment. After finding out about the murders, Jade Turner sent text messages to Appellant stating that he was "dumb," and she was "so disappointed" in him, and that she knew what he did. In addition, two days after the murders, a phone matching the one that belonged to Angela Sanders was discovered under a shrub outside of Phalan Jones' apartment.
>
> Based on this evidence, Appellant was arrested and charged with three counts of criminal homicide, two counts of attempted murder, two counts of aggravated assault, and one count each of robbery, burglary, carrying a firearm without a license, possession of a firearm by a minor, and criminal conspiracy to commit robbery. Following a four-day long jury trial, he was convicted of all the above-stated offenses, except for possession of a firearm by a minor, for which the court granted Appellant's motion for a judgment of acquittal… (transcript references and footnotes omitted).[9]

As set forth above, in his federal petition Kirk appears to be challenging the authority of the Court of Common Pleas of Allegheny County to charge, convict and confine him of the criminal charges. Clearly this claim was never raised in the courts of the Commonwealth in the first instance.

It is provided in 28 U.S.C. §2254(b) that:

---

[9] See: Respondent's Exhibit 5 at pp. 1-8.

> An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).[10]

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[10] We note that petitioner filed a second post-conviction petition in the Court of Common Pleas on July 28, 2016 (See: Answer at Ex. 12).

That is, the state court determination must be objectively unreasonable. Renico v. Lett, 130 S.Ct. 1855 (2010). This is a very difficult burden to meet. Harrington v. Richter, 131 S.Ct. 770 (2011).

In Coleman v. Thompson, 501 U.S. 722,750 (1991), the Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.

Because no such showing is made here, a procedural default has occurred and no further consideration of these issues is warranted here.

However, even if the petition was properly before this Court, Kirk appears to seek to challenge the jurisdiction of the Court of Common Pleas of Allegheny County. As noted above, the crime scene, namely McKeesport, Pennsylvania, lies within Allegheny County, Pennsylvania.

Article V §5 of the Pennsylvania Constitution provides, "there shall be one court of common pleas for each jurisdictional district … having unlimited original jurisdiction in all cases..." Thus, while all common pleas courts have jurisdiction to hear any criminal case, those cases "shall be brought before the issuing authority for the … district in which the offense is alleged to have occurred…" Pa. R. Crim P. 130. Since, McKeesport is located in Allegheny County, charges were appropriately filed in the Court of Common Pleas that county.

Accordingly, because the petitioner has failed to challenge the jurisdiction of the Court of Common Pleas of Allegheny County, Kirk has failed to exhaust the available state court remedies and his petition here is subject to dismissal. However, even if properly before this Court his contentions are meritless.

Thus, because petitioner has failed to demonstrate that his conviction was secured in any manner contrary to the laws of the United States as determined by the Supreme Court, nor that it was secured in any manner contrary to that Court's determinations, his petition here will be dismissed. In addition, because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

An appropriate Order will be entered.

s/ Robert C. Mitchell
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEANTHONY KIRK, KG-1155, )
    Petitioner, )
     )
    v. ) 2:16-cv-733
     )
SUPT. MCGINLEY, et al., )
    Respondents. )

ORDER

AND NOW, this 19th day of January 2017, for the reasons set forth above, the petition of Deanthony Kirk for a writ of habeas corpus (ECF No. 4) is DISMISSED, and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability is DENIED.

                                                s/ Robert C. Mitchell
                                                United States Magistrate Judge